.JAMES W. FIELD

v.

THE INHABITANTS OF THE TOWNSHIP OF WEST ORANGE, &c.

A municipal corporation may be enjoined from discharging the water-drainage from the gutters of its streets on private lands, in such quantities as to impair the value and use of those lands.

Bill for relief.  On general demurrer.

*Mr. J. W. Taylor*, for the demurrants.

*Messrs. J. W. & J. K. Field*, for complainant.

THE CHANCELLOR.

The bill is filed for an injunction to restrain the defendants from continuing to discharge the drainage of certain streets on the complainant's land, to his injury. Part of the drainage is discharged on low land in the neighborhood of his land, and part into a private ditch or drain running through his land and the low land just mentioned. By means of the discharge of the drainage on the low land and into the ditch, the complainant's land is at times overflowed, and thus irremediable damage is done him. The overflow submerges his land, which otherwise would be drained by the ditch, and it injuriously affects his other property in the immediate vicinity by the large quantities of stagnant water which are thus collected and left there. When

Field *v.* West Orange.

the complainant purchased his property through which the ditch runs (which was in 1873), none of the water from the streets in question was discharged into the drain, but it all passed off along the streets into two natural water-courses. Since then, and from a time shortly after the complainant bought his land through which the ditch runs, the defendants have caused the drainage to be, as before stated, discharged upon the low land and into the drain at complainant's land by new channels created by themselves for the purpose. They insist that they have the right thus to dispose of the water from the streets in the exercise of their municipal authority to regulate and grade the streets in question. But, in the first place, it does not appear, for it is not so stated in the bill, that the diversion complained of was made in the grading or other regulation of the streets. Assuming, however, that it was caused by the alteration of the grade, or in the regulation of the streets, it is quite clear that the defendants have no right to collect the water from the streets in a body and discharge it on the complainant's land to his damage, or in the private drain running through it, or on property adjacent to his, to the injury of his property. The cases on which they rely are *Bowlsby* v. *Speer, 2 Vr. 351,* and *Town of Union* ads. *Durkes, 9 Vr. 21.* But those cases do not support their claim. In the former—a suit between private persons—it was held that the diversion of surface-water to the injury of another's land was not an actionable grievance, and in the latter, that where damage is done in that way by the grading of streets, under competent authority, there is no responsibility to the injured party. The injury complained of in this case is not the result of grading or regulating the streets, but is occasioned by the act of the municipal authorities in giving a new direction to the water from the streets, for the purpose of conducting part of it to the low lands near the complainant's property, and the rest to the private drain on his land. And though, by our law, there is no redress for the injury done by the diversion of surface-water in the grading or regulation of streets, the doctrine cannot be applied so as to give license to municipal authorities to discharge the waters of streets on private property, thus condemning it to the use of the

public without compensation. Such an application of the doctrine would not only be unreasonable, but would sanction flagrant and manifest injustice. A land-owner has no right to cause, by means of artificial trenches or otherwise, the natural mode of discharge of surface-water from his land on that of his neighbor to be changed to the injury of the land of the latter, by conducting it by new channels in unusual quantities to or on a particular part or parts of the latter's land. *Washb. on Easements 353; Ang. on Water-Courses 108; Bellows* v. *Sackett, 15 Barb. 96; Foot* v. *Bronson, 4 Lans. 47.* He has no right, for example, to build a house on his land and collect the rainfall in a gutter on it and discharge it by a spout on his neighbor's land.

In *Foot* v. *Bronson,* where the defendants, to relieve their land from surface-water, deepened a ditch on the highway, and thus caused an increased and unnatural flow of water through the surface-drains of adjacent owners, to the injury of their land, it was held that a mandatory injunction should issue to compel the defendants to fill up the ditch to its former level, and to restrain them from lowering it again. The principle is applicable to municipal authorities charged with the duty of regulating streets. The law on that subject is well stated by Judge Dillon as follows: "Authority to establish grades for streets, and to graduate them accordingly, involves the right to make changes in the surface of the ground which may affect injuriously the adjacent property-owners; but where the power is not exceeded there is no liability, unless created by statute, and then only in the mode and to the extent provided, for the consequences resulting from its being exercised and properly carried into execution. On the one hand, the owner of the property may take such measures as he deems expedient to keep surface-water off from him, or turn it away from his premises on to the street, and, on the other hand, the municipal authorities may exercise their powers in respect to the graduation, improvement and repair of streets without being liable for the consequential damages caused by surface-water to adjacent property." *Dill. on Mun. Corp.* § *798.* The same learned and judicious author withholds his assent from the doctrine that corporate authorities,

by reason of their control over streets and their power to grade and improve them, have the legal right intentionally to divert the water therefrom to protect the streets and discharge it on the land of an adjacent proprietor, it may be to its destruction. *Id.* § *799.* The land-owner is indeed compelled to bear (if he cannot himself protect his property against them) the consequences naturally flowing from grading and regulating the streets, but he is not compelled to submit to the destruction or injury of his land by the intentional diversion of the water from the streets to and on his property for the benefit of the public. The municipal authorities have no right to single him out to bear, without compensation therefor, a public burden to the relief of the property of his neighbors. The gross injustice of the contrary doctrine is so palpable as to render further remark superfluous. In the case in hand, however, as before stated, it does not appear that the injury complained of is due to the action of the defendants in grading or regulating the streets. Nor does it appear that they had any authority of any kind for their action. The demurrer will be overruled.